```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  5/6/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
MINTZ & GOLD LLP,                                                 :
                                                                  :        15 Civ. 1218 (PAE)
                                        Plaintiff,                :
                                                                  :        OPINION & ORDER
                     -v-                                          :
                                                                  :
FRED A. DAIBES,                                                   :
                                                                  :
                                        Defendant.                :
                                                                  :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Mintz & Gold LLP ("M&G"), a law firm, filed this lawsuit four years ago in

New York state court against its former client, defendant Fred A. Daibes, bringing state-law

claims and seeking $81,049.65 in unpaid legal fees, plus interest, in damages.  In February 2015,

a state appellate court ordered that summary judgment be entered for M&G on a key claim.  Two

days later, Daibes removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446.

M&G now moves to remand the case, on the ground that the removal was untimely.  For the

reasons set forth below, the Court grants the motion to remand, and awards M&G its out-of-

pocket costs, but, because M&G proceeded *pro se* and therefore did not pay any attorneys' fees,

does not award such fees.  M&G also seeks sanctions pursuant to Federal Rule of Civil

Procedure 11, on the ground that Daibes's removal, nearly four years out of time, was frivolous.

The Court imposes such sanctions, in the amount of $10,000, on Daibes's counsel, Richard J.

Abrahamsen, Esq., for frivolously removing this case.

I.      **Background**[1]

A.      **M&G's Lawsuit in New York State Court Against Daibes**

On December 8, 2009, M&G and Daibes, a real-estate developer, entered into a written retainer agreement.  Under it, M&G was to provide legal services to Daibes and affiliated companies, arising out of disputes that Daibes was then having with environmental regulators in New Jersey.  M&G claims that it provided such services, with Daibes's consent, and sent invoices to Daibes, listing the work performed on his behalf.  According to M&G, however, Daibes, apart from paying an initial retainer, did not pay M&G the money it was due.

In August 2010, M&G sued Daibes in New York State Supreme Court in Manhattan to collect its outstanding fees.  M&G represented itself in that litigation; Daibes was represented by

---

[1] The facts recited here relating to the underlying fee dispute between M&G and Daibes include facts drawn from M&G's Complaint, Dkt. 1, Ex. A ("Compl.").  In resolving this motion, the Court treats all facts alleged therein as true.  *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." (citations omitted)).  In setting out the history of this case while it was pending in state court, the Court also has drawn upon pleadings in the state court action and written communications between the parties.  In addition, because Abrahamsen has attempted to justify the 2015 removal of the case by arguing that there was improper service of his client in 2011, the Court, in assessing that argument, has considered materials bearing on that point, in particular, the Declaration of Scott A. Klein, in support of the motion to remand, Dkt. 22 ("Klein Decl."), the Affidavit of Richard J. Abrahamsen, in opposition to that motion, Dkt. 27 ("Abrahamsen Decl. Remand"), and the Affidavit of Ryan W. Lawler, in reply, Dkt. 33 ("Lawler Decl. Remand"), and materials attached to those filings.  *See Arseneault v. Congoleum*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002), *reconsideration denied*, 2002 WL 531016 (S.D.N.Y. Apr. 8, 2002) ("The Second Circuit . . . has said that, on jurisdictional issues, 'federal courts may look outside [the] pleadings to other evidence in the record,'" and therefore the court will consider "material outside of the pleadings" submitted on a motion to remand. (citation omitted)).  Finally, in considering M&G's motion for Rule 11 sanctions, the Court considered the Declaration of Steven Mintz, Dkt. 25 ("Mintz Decl."), the Affidavit of Richard J. Abrahamsen, in opposition to that motion, Dkt. 29 ("Abrahamsen Decl. Sanctions"), and the Affidavit of Ryan W. Lawler, in reply, Dkt. 35 ("Lawler Decl. Sanctions").  Except where specifically referenced, no further citation to these documents will be made.

by Nicholas G. Sekas, Esq., then of Sekas & Associates, LLC.  On April 15, 2011, that lawsuit was dismissed, without prejudice and with leave to replead, based on M&G's failure to comply with New York's pleading requirements, N.Y. Comp. Codes R. & Regs., 22 § 137.0 (2001). Lawler Decl. Remand, Ex. 5.

On April 19, 2011, M&G again sued Daibes in New York State Supreme Court in Manhattan to collect its outstanding fees.  The lawsuit was substantially the same as the prior lawsuit, but corrected the pleading defect.  M&G's claims included breach of contract, *quantum meruit*, account stated, and unjust enrichment.  M&G's complaint sought damages of $81,049.65, the amount of unpaid legal fees, plus interest.  M&G again represented itself, and Daibes was again represented by Sekas and his law firm.  In May 2011, Sekas joined a new law firm, Sekas & Abrahamsen LLC, and continued his representation of Daibes through that firm. In December 2013, Sekas and his law partner, Richard J. Abrahamsen, Esq., had a falling out. Daibes thereafter was represented by Abrahamsen, his current counsel.

The parties litigated extensively in state court, ultimately leading both sides to move for summary judgment.  On December 19, 2013, the state Supreme Court denied M&G's motion for summary judgment on its account stated claim, which sought payment of M&G's unpaid invoices to Daibes.  M&G appealed.  On February 17, 2015, the Appellate Division, First Department, reversed, directing the lower court to enter summary judgment in M&G's favor on that claim.

### B.    Daibes's Notice of Removal

Two days later, on February 19, 2015, Daibes filed a notice of removal in this Court. Dkt. 1.  Daibes asserted that this Court had subject-matter jurisdiction based both on diversity and on the presence of a federal question.  As to diversity jurisdiction, the notice of removal

stated, M&G is a New York limited liability partnership ("LLP"); Daibes is a citizen of New

Jersey; and M&G sought damages in excess of $75,000.  As to federal question jurisdiction, the

notice of removal stated, Daibes's defense implicated a constitutional question:  Daibes claimed

that he did not have minimum contacts with the forum state, New York, so as to satisfy due

process.  Daibes also claimed that the notice of removal was timely filed pursuant to 28 U.S.C.

§ 1446(c)(1) because of "plaintiff's bad faith."  Separately, on March 4, 2015, Daibes filed a

motion in this Court to dismiss M&G's complaint, Dkt. 7–8, for want of personal jurisdiction.

### C.      M&G's Response and Motion for Rule 11 Sanctions

On March 6, 2015, M&G filed a letter, arguing that the notice of removal was time-

barred and frivolous.  Dkt. 13.  M&G also reported that on February 27, 2015, it had served

Daibes with a motion for Rule 11 sanctions, in connection with Daibes's notice of removal,

pursuant to Federal Rule of Civil Procedure 11(c).  *Id.*  M&G requested a conference with the

Court regarding the next steps in this case.  *Id.*  On March 10, 2015, Daibes responded,

reiterating that removal was justified and dismissal was merited.  Dkt. 14.

On March 12, 2015, the Court scheduled a conference to address these issues, and

suspended the deadlines for M&G to move to remand and to oppose Daibes's motion to dismiss.

Dkt. 17.  On March 25, 2015, the Court held a conference, directed M&G to file concurrently its

motions to remand and for Rule 11 sanctions, and set a schedule for such filings.  Dkt. 19, 30.

On April 3, 2015, M&G filed a motion for remand and just costs and fees, Dkt. 20, and a

separate motion for Rule 11 sanctions, Dkt. 23, along with supporting briefs, Dkt. 21 ("Pl. Br.

Remand"), 24 ("Pl. Br. Sanctions").  On April 10, 2015, Daibes submitted his opposition to the

motions.  Dkt. 26 ("Def. Br. Remand"), 28 ("Def. Br. Sanctions").  On April 15, 2015, M&G

filed replies for both motions.  Dkt. 32 ("Pl. Reply Br. Remand"), 34 ("Pl. Reply Br. Sanctions").

On April 27, 2015, the Court heard argument.

## II.      The Motion for Remand

The Court first considers M&G's motion for remand.

### A.          Applicable Legal Standards

"[A]ny civil action brought in a State court of which the district courts of the United

States have original jurisdiction, may be removed by the defendant or the defendants, to the

district court of the United States for the district and division embracing the place where such

action is pending."  28 U.S.C. § 1441(a).  District courts have original jurisdiction over cases

where there is diversity jurisdiction, which exists when a lawsuit is between parties of diverse

state citizenship and exceeds the required jurisdictional amount, $75,000, or federal question

jurisdiction, which exists where a plaintiff has pleaded a colorable claim "arising under" the

Constitution or laws of the United States.  *See* U.S. Const. art. III, § 2; 28 U.S.C. § 1332(a); *Da

Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000).

Strict rules govern the timing of notices of removal.  Where a case is removable based on

the initial pleadings, a defendant must file a notice of removal within 30 days of "the receipt by

the defendant, through service or otherwise, of a copy of the initial pleading."  28 U.S.C. §

1446(b)(1).  Where an action is not removable based on the initial pleadings, "a notice of

removal may be filed within thirty days after receipt by the defendant, through service or

otherwise, of a copy of an amended pleading, motion, order or other paper from which it may

first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).

This provision, known as the "revival" exception, governs cases where a later development first

provides a basis for removal—for example, the filing of an amended pleading that drops a non-

diverse party or seeks, for the first time, more than $75,000 in damages.  *See Frontier Park Co., LLC v. Contreras*, 35 F. Supp. 3d 264, 268 (E.D.N.Y. 2014); *In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *3 (S.D.N.Y. Apr. 17, 2006) (citing *Wilson v. Intercollegiate (Big Ten) Conf. Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982)).  Under § 1446(c)(1), "[a] case may not be removed under [the revival exception] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal."  *Cal. Pub. Emps.' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted).

## B.    Discussion

The sole disputed issue with respect to Daibes's removal is whether it was timely.  Both parties agree that, based on M&G's initial pleadings in 2011, the case could have been removed based on diversity jurisdiction, inasmuch as M&G pled that it was a New York limited liability partnership,[2] that Daibes is a resident of New Jersey, and that the amount in controversy was $81,049.65, plus interest.  Dkt. 1; Pl. Br. Remand 6.[3]

---

[2] M&G's initial complaint did not spell out why it is a citizen of New York.  On February 27, 2015, the Court directed M&G to submit a sworn affidavit to this Court, listing the names and citizenship of each of its members to ensure that diversity jurisdiction existed in this case.  Dkt. 4; *see also E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 932 (2d Cir. 1998) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)); *Glazer Capital Mgmt., LP v. Elec. Clearing House, Inc.*, 672 F. Supp. 2d 371, 375–76 (S.D.N.Y. 2009).  On March 6, 2015, M&G's equity partner, Steven G. Mintz, Esq., filed a declaration, attesting that both of the firm's partners are citizens of New York.  Dkt. 12.

[3] The alternative basis for removability asserted in the notice of removal—that there is federal question jurisdiction over this action—is plainly incorrect.  The notice of removal identified the

Under § 1446(b)(1), Daibes's notice of removal was untimely—by close to four years. Daibes was obliged to file any notice of removal within 30 days of the receipt by the defendant of M&G's initial complaint, which disclosed the existence of diversity jurisdiction. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205–06 (2d Cir. 2001); *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436–37 (S.D.N.Y. 2006).[4]   The initial complaint was filed on April 19, 2011, and was served on Sekas, Daibes's counsel, that same day.  Sekas accepted service on his client's behalf.  *See* Klein Decl., Exs. 2–4.  Accordingly, under § 1446(b)(1), Daibes' notice of removal was due by May 19, 2011.  Daibes's failure to file a notice of removal until February 19, 2015, some 45 months later, made his removal untimely.

_____

federal question as to whether Daibes had "minimum contacts with the forum state."  Dkt. 1 ¶ 10. But under the well-pleaded complaint rule, a defendant may remove only if plaintiff's complaint itself states a federal claim for relief.  *See, e.g.*, *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986) ("[R]emoval based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint."); *Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.") (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).  Here, M&G's claims arise only under state law.  *See* Compl.  Daibes's notice of removal articulates a defense based in federal law, but, to justify removal, "[i]t is not enough that the complaint anticipates a potential federal defense."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012).  Daibes, in opposing the motion for remand, does not counter these authorities.  *See* Def. Br. Remand.

[4] Daibes's counsel, Abrahamsen, acknowledged at the April 27, 2015 argument that the initial complaint supplied a basis for removal:

> **The Court**:  You don't dispute, do you, that the initial complaint filed by Mintz & Gold in this action satisfied the requirements for diversity jurisdiction, do you?  In other words, in the initial complaint.
> **Mr. Abrahamsen**:  On the face of the complaint, yes.  It satisfied diversity.  We have complete diversity between the parties, and a dispute in excess of $75,000.
> **The Court**:  Was there anything that prevented your client from removing immediately upon the receipt of that complaint?
> **Mr. Abrahamsen**:  There wasn't anything preventing it.

Tr. 23.

In the face of this, Daibes makes one argument.  He asserts that because he was never personally served with M&G's complaint, but instead was served through his counsel, Sekas, the 30-day clock for removal under § 1446(b)(1) never began to run.  Therefore, Daibes argues, he was at liberty at all times thereafter to remove the case, regardless of how far it had progressed in state court, including in February 2015, after receiving an adverse summary judgment ruling in state appellate court.

This argument is plainly incorrect.  For two independent reasons, the time in which Daibes was permitted to file a notice of removal ran out years ago.

*First*, the deadline under § 1446(b)(1) is triggered by "the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."  And under the circumstances of this case, there is no question that this standard was met when Sekas, Daibes's attorney, was served with the initial complaint on April 19, 2011.

There is contemporaneous documentary evidence of such service.  An affidavit of service by the process server, Jacques Marc, sworn to on April 20, 2011, recites:  "On April 19, 2011, I served the SUMMONS AND COMPLAINT and REQUEST FOR JUDICIAL INTERVENTION in this matter on Fred A. Daibes by delivering the said papers to Nicholas Sekas of Sekas & Associates, LLC, located at 515 Madison Avenue, New York, N.Y. 10022.  Mr. Sekas had agreed to accept service on behalf of Fred A. Daibes."  *See* Klein Decl., Ex. 4.

To be sure, at argument before this Court, Daibes's current attorney, Abrahamsen, briefly attempted to contest the process server's factual representation that such service on his then-partner, Sekas, had occurred that day.  Abrahamsen denied that such service had occurred, and briefly, represented as a matter of fact that Sekas had not been present at the firm's New York office on April 19, 2011.  Abrahamsen implied that he, Abrahamsen, had personal knowledge of

Sekas's whereabouts that day.[5]   Pressed by the Court, however, Abrahamsen abandoned that

claim.  Abrahamsen acknowledged that he had not been with Sekas throughout that day and that

---

[5] The following are relevant excerpts of the Court's exchange with Abrahamsen on this point:

> **The Court**:  And the following day, I take it is not disputed that Mintz & Gold served the complaint on Mr. Sekas?
>
> **Mr. Abrahamsen**:  I don't think it was served on Mr. Sekas.  I think it was mailed to Mr. Sekas.  I think there is a cover letter—
>
> **The Court**:  Well, the Klein declaration at exhibit four reflects that the process server served the summons and complaint on Sekas and that Sekas accepted service. Do you controvert that?
>
> **Mr. Abrahamsen**:  Yes.  It was mailed.  There was no personal service on Mr. Sekas.  And certainly no personal service on Mr. Daibes.
>
> **The Court**:  I didn't ask you about that.  The process server says on April 18, 2011, I served the summons and complaint and request for judicial intervention in this matter on Fred A. Daibes by delivering the said papers to Nicholas Sekas of Sekas & Associates LLC, located at 515 Madison Avenue, New York, New York, 10022.
>
> **Mr. Abrahamsen**:  We do dispute that.
>
>   . . .
>
> **The Court**:  Do we have a declaration from Mr. Sekas disputing that?
>
> **Mr. Abrahamsen**:  We don't.  We have a declaration from Mr. Daibes.
>
> **The Court**:  Doesn't matter.  I am asking what the representation was by Sekas. You've obviously had lots of time to reach out to your former law partner Mr. Sekas.  Why is there no declaration from him denying that he was served?
>
> **Mr. Abrahamsen**:  Your Honor, we are not on speaking terms unfortunately because of other disputes.
>
> **The Court**:  Be that as it may.  You represent a client here.  You could have sought some form of authority to briefly depose him.  Do you have any basis—let me unpack this.  When did you last speak to Mr. Sekas?
>
> **Mr. Abrahamsen**:  December 31 of 2013.
>
> **The Court**:  You are an officer of the court, right?
>
> **Mr. Abrahamsen**:  Yes, your Honor.
>
> **The Court**:  A moment ago, you told me Mr. Sekas was not personally served.  As an officer of the court, what was your basis for saying that or were you making it up?
>
> **Mr. Abrahamsen**:  Because based upon what was filed with the Court, the process server left the summons and compliant at 530 Madison Avenue where Mr. Sekas does not, he does not have an office there.
>
> **The Court**:  Sorry.  The process server says that he delivered the papers to Sekas at 515 Madison Avenue.  He goes on to say Mr. Sekas had agreed to accept service on behalf of Fred A. Daibes.  You have not spoken to Mr. Sekas since 2013.  On what basis beyond just conjuring do you represent to me that Mr. Sekas did not in fact have these papers delivered to him that day?  How do you say that?

he was not in position to contest that Sekas had been at the firm's 515 Madison Avenue office and had received personal service of M&G's initial pleading that day.  Abrahamsen also acknowledged that he had not done any factual investigation before claiming to the Court that Sekas had not been served that day.  Abrahamsen stated that he had neither asked nor attempted to ask Sekas about such service.  Indeed, Abrahamsen admitted, he had not communicated with Sekas about anything since December 2013.  There is, therefore, no factual basis to refute that Sekas was personally served that day.

Further, on the facts here presented, service upon Sekas that day was plainly sufficient to stand as service upon his client, Daibes.  Under New York law, service of process upon a natural person may be effected by delivering the summons within the state to the individual's agent.  *See* N.Y. C.P.L.R. § 308.  To be sure, "[a]n attorney, solely by reason of his capacity as an attorney,

---

**Mr. Abrahamsen**:  I will say it.
    . . .
**The Court**:  Can you swear to me Mr. Sekas never left New Jersey at all that day?
**Mr. Abrahamsen**:  I can't.
**The Court**:  So, that's the problem here.
**Mr. Abrahamsen**:  As an officer of the court, I can't.
**The Court**:  That's the problem.  You are an officer of the court, but a moment ago, you told me that Mr. Sekas didn't have these materials delivered to him that day.  And the problem here is I've got the process server with contemporaneous documentation saying that he did.  And I've got you as Mr. Sekas's asserted keeper, telling me that you think that he didn't leave New Jersey that day, but you really don't know.  And I understand that it must be frustrating for you to have a detached relationship from Mr. Sekas right now, but we live in a world of fact-finding here, not guesswork.
**Mr. Abrahamsen**:  I understand.
**The Court**:  Yes or no, can you represent under oath that Mr. Sekas was not in New York City that day?
**Mr. Abrahamsen**:  I can't—not being Mr. Sekas, I can't.  I can say from my own personal knowledge, yes.
**The Court**:  I don't know what your personal knowledge is if you weren't present.

Tr. 11–17.

does not thereby become his client's agent authorized by 'appointment . . . to receive service of process. . . .  What is necessary is that it appear that the attorney was authorized, either expressly or impliedly, to receive service of process for his client."  *United States v. Bosurgi*, 343 F. Supp. 815, 817 (S.D.N.Y. 1972); *see also Olympus Corp. v. Dealer Sales & Serv., Inc.*, 107 F.R.D. 300, 305 (E.D.N.Y. 1985) (under New York law, "an attorney's claim that he is authorized to receive process is not by itself sufficient; there must be some evidence that the client intended to grant such authority.") (citing *Charles H. Greenthal & Co. v. 301 E. 21st St. Tenants' Ass'n*, 91 A.D.2d 934 (1st Dep't 1983)).

 Here, however, there is compelling evidence that Sekas was authorized by Daibes to accept service for him.  Sekas had represented Daibes in the initial lawsuit brought by M&G in New York State Supreme Court in Manhattan to collect the unpaid legal fees.  Sekas, in fact, had initially succeeded in getting that case dismissed based on technical pleading defects.  That dismissal occurred on Friday, April 15, 2011; the current case, which is substantively identical, was filed the following Tuesday, April 19, 2011, and served on Sekas the same day.  The process server's affidavit reflects Sekas's statement that he accepted service on behalf of his client.  Klein Decl., Ex. 4.  And an email of the same day reflects that Sekas's office had confirmed to M&G that it "would be accepting service for him."  Klein Decl., Ex. 2.  Finally, the same day, M&G wrote Sekas, attaching the summons and complaint as filed, and stating:  "This letter serves to confirm your conversation with my office wherein you agreed to accept service of the summons and complaint on behalf of Mr. Daibes."  Klein Decl., Ex. 3.

 Further, in the ensuing weeks and months, Sekas actively litigated on Daibes's behalf in this case:  On May 9, 2011, for example, Sekas filed a motion to dismiss, *see* Mintz Decl., Ex. 4, and on July 24, 2012, after the motion to dismiss was denied, Sekas, on Daibes's behalf, filed an

answer with counterclaims, *see* Mintz Decl., Ex. 6; Klein Decl., Ex 1.; Dkt. 18, Ex. 5.  At no

point did Sekas claim that service upon his client had been defective or that M&G had been

incorrect in representing that Sekas had agreed to accept service for Daibes.  Nor did Daibes's

successor counsel, Abrahamsen, ever make any claim of defective service prior to the removal in

February 2015 to federal court.

Under these circumstances, the evidence is persuasive, and indeed compelling, that

Daibes "intended to be bound by the acceptance of the complaint by" Sekas.  *Shuster v. Nassau*

*County*, No. 96 Civ. 3635 (JGK), 1999 WL 9847, at *3 (S.D.N.Y. Jan. 11, 1999); *see also J&L*

*Parking Corp. v. United States*, 834 F. Supp. 99, 103 (S.D.N.Y. 1993).  Significantly, at

argument, Daibes's current counsel, Abrahamsen, acknowledged that his client, Daibes, had been

aware of Sekas's litigation efforts on his behalf and supported Sekas & Abrahamsen's

submission of a summary judgment motion on his behalf.  Tr. 17, 20.

*Second*, even if service on Sekas did not constitute "receipt by the defendant, through

service or otherwise, of a copy of the initial pleading," 28 U.S.C. § 1446(b)(1), Daibes long ago

waived the right to make any such challenge to service.  He did so in two ways.

First, Daibes, in state court, affirmatively litigated the issue of personal jurisdiction,

without ever raising a challenge to the adequacy of service.  Under New York law, "a defendant

appears by serving an answer or a notice of appearance, or by making a motion which has the

effect of extending the time to answer . . . .  An appearance by a defendant is equivalent to

personal service of the summons upon it, unless objection to jurisdiction is asserted either in a

pre-answer CPLR 3211 motion or in the answer."  *Urena v. Nynex, Inc.*, 223 A.D.2d 442, 443

(1st Dep't 1996) (internal quotation marks and citations omitted).  "[W]here a defendant makes

an appearance without having been served and without raising the objection, he becomes a

volunteer and is subject to in personam jurisdiction . . . .  [A]ny deficiency in the manner in which the summons and complaint first came into [defendant's] possession does not render its first answer a nullity, and [defendant's] failure to raise the jurisdictional issue in that answer therefore constitutes a waiver of the affirmative defense pursuant to CPLR 3211(e)."  *Id.* at 444 (internal quotation marks and citations omitted); *see also Addesso v. Shemtob*, 70 N.Y.2d 689, 690 (1987); *McGowan v. Hoffmeister*, 15 A.D.3d 297, 297 (1st Dep't 2005); *Gelstein v. Lieberman*, 182 A.D.2d 487, 488 (1st Dep't 1992).

Here, Daibes failed to contest the adequacy of service in his pre-answer motion to dismiss or answer in state court.  On May 6, 2011, Daibes filed a motion to dismiss, arguing that New York courts lacked personal jurisdiction over him pursuant to N.Y. C.P.L.R. 302(a).  Mintz Decl., Ex. 4, at 5.  Specifically, Daibes contended that New York courts lacked long-arm jurisdiction—that is, he alleged that the entire matter in controversy occurred in New Jersey and that he is a New Jersey domiciliary.  *Id.*  Daibes made several other arguments for dismissal, including collateral estoppel and M&G's failure to participate in obligatory fee dispute resolution, but Daibes did not argue that there was a lack of personal jurisdiction because of improper service.  On July 5, 2012, the New York Supreme Court denied Daibes's motion to dismiss.  Mintz Decl., Ex. 5.  On July 24, 2012, Daibes filed an answer, again asserting that M&G's claims should be dismissed for lack of subject matter and personal jurisdiction.  Mintz Decl., Ex. 6, at 5.  Daibes, however, again did not state that he was challenging the service of summons and complaint.

Now, in opposition to the motion to remand, Daibes contends that because he raised personal jurisdiction defenses in both the motion to dismiss and answer, he did not waive his inadequate service defense.  But the law is to the contrary.  As New York courts have held, a

failure to specifically raise a jurisdictional defense in an answer or pre-answer motion to dismiss constitutes "a submission to the court's jurisdiction and a waiver" of the jurisdictional defense. *Wideman v. Barbel Trucking, Inc.*, 3 A.D.3d 449, 450 (1st Dep't 2004) (finding that defendant had waived his long-arm jurisdictional defense where he earlier moved to dismiss based on defective service); *see also Wiesner v. Avis Rent-A-Car, Inc.*, 182 A.D.2d 372, 372–73 (1st Dep't 1992) (same).  Thus, because Daibes contested only New York's long-arm jurisdiction and did not contest the adequacy of service of process in his pre-answer motion to dismiss, Daibes waived his service of process challenge.  He thereby could not raise it later in the answer or in any subsequent motion.

In the face of this authority, Daibes argues that he was still free to remove the case as late as February 2015 based on the decision in *Murphy Brothers v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).  But *Murphy Brothers* does not assist Daibes's cause.  There, the Supreme Court stated that "[i]n the absence of service of process *(or waiver of service by the defendant)*, a court ordinarily may not exercise power over a party the complaint names as defendant."  *Id.* at 350 (emphasis added).  In citing *Murphy Brothers*, Daibes's counsel, Abrahamsen, excised the italicized language above—"(or waiver of service by the defendant)"—and replaced it with ellipses.  It was based on this misleading presentation of the Supreme Court's *Murphy Brothers* decision that Daibes claimed that, without service of process, the 30-day removal clock failed to begin to run.  Def. Br. Remand 3–4.  But under *Murphy Brothers*, the removal clock begins by service of process *or* waiver of service.  And as discussed above, here both occurred:  There was adequate service of process, on Daibes's then-counsel, Sekas, who was authorized to receive such service, and Daibes in any event clearly waived such service when (among other occasions)

he failed to challenge service of process while raising a different jurisdictional defense in his pre-answer motion to dismiss.[6]

More fundamentally, by extensively defending against M&G's state-court lawsuit for nearly four years—including through motions practice, discovery, summary judgment, and the resolution of an appeal—without ever challenging the adequacy of service, Daibes waived any right to challenge service as deficient.  Uniform case law holds that a defendant may not long defer filing a notice of removal while seeing how he or she fares in state court.  "[T]he policy of th[e] removal statute . . . could not have been to give defendants an unfair advantage by allowing them to test the water in the state forum before deciding whether or not to stay there."  *Manas y Pineiro v. Chase Manhattan Bank, N.A.*, 443 F. Supp. 418, 420 (S.D.N.Y. 1978); *see also Hoffman v. Vitamin Shoppe Indus. Inc.*, No. 14 Civ. 8629 (JMF), 2015 WL 224406, at *5 (S.D.N.Y. Jan. 16, 2015) ("[Defendant] may not, after nearly three years of litigation in state court, prevent the trial court from entering judgment by removing this case to federal court.  Its remedy—if it has one at all—is in the state courts, either before the trial court or on appeal."); *Boskoff v. Boeing Co.*, No. 83 Civ. 2756 (IBW), 1984 WL 1066, at *3–*4 (S.D.N.Y. Oct. 19, 1984) ("The removal of the action by [defendant] after over five years of litigation in the state court was wholly improper; to sustain such a removal would enable a litigant to hazard the

---

[6] Daibes claims that M&G did not personally serve him in order to "hamper removability," Def. Br. Remand 9, and for the same purpose did not serve him with a pre-action notice in accordance with New Jersey Court Rules, *id.* at 10.  On this ground, Daibes claims that M&G acted in bad faith, entitling him to remove now under 28 U.S.C. 1446(c)(1).  *Id.* at 9.  That argument does not logically follow.  During the more than four years this case was litigated in state court, Daibes and his counsel had ample opportunity to protest any ostensible procedural irregularities but did not do so.  And Daibes's current counsel, Abrahamsen, concedes that Daibes had been at liberty to remove this case in April 2011 but elected not to do so until after the Appellate Division, in 2015, awarded his adversary, M&G, summary judgment.  On the record before the Court, there is no basis on which to find bad faith by M&G, let alone bad faith of the sort necessary to toll the removal clock.

chances of litigation in the state court indefinitely but to remove the action whenever it seemed advantageous to do so."); *Irving Trust Co. v. Century Export & Import, S.A.*, 464 F. Supp. 1232, 1239–40 (S.D.N.Y. 1979).

Daibes's dilatory removal, in fact, supplies an excellent example of such improper "forum shopping." *Steadman v. Sinclair*, No. 96 Civ. 599 (DC), 1996 WL 257664, at *3 (S.D.N.Y. May 16, 1996).   Daibes was content to litigate in state court for some four years, including while the parties' summary judgment motions were heard in the state supreme court. But, immediately upon the Appellate Division's order directing that summary judgment for M&G be entered on its account stated claim, Daibes removed to this Court, thereby preventing— for the time being—M&G from obtaining tangible relief on that claim.   Under these circumstances, Daibes's removal was patently improper and the removal is "patently untimely." *Hoffman*, 2015 WL 224406, at *3.

For these reasons, the Court remands this case to New York State Supreme Court.

### III.   Motion for Fees & Costs Related to Remand

The Court next addresses M&G's motion for fees and costs associated with Daibes's improper removal and the ensuing remand motion that M&G was obliged to make to return this case to state court.

Under § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   Where a removing party lacked an objectively reasonable basis for seeking removal, it may be properly charged with paying its adversary's attorneys' fees and costs.   *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).   That principle applies here.   Daibes's removal of this case to this Court was frivolous.   It was completely unsupported by legal authority and was transparently

motivated by Daibes's desire to avoid having to pay the judgment ordered by the appellate division.

Here, however, to the extent M&G seeks payment by Daibes of its attorneys' fees, its application cannot be granted, for a separate reason: because M&G appears *pro se*, and paid no out-of-pocket fees. "It is well-settled that *pro se* litigants such as [M&G] . . . are not entitled to fee awards or litigation expenses authorized by fee-shifting statutes." *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (citing *Kay v. Ehrler*, 499 U.S. 432, 435 (1991)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998)); *Clarke v. Parkinson*, 225 F. Supp. 2d 345, 355 (S.D.N.Y. 2002) ("Where an individual litigant elects to undertake legal research, or factual research, or other case-related tasks, even in order to save counsel fees, the litigant should not expect to have the costs of his or her efforts included in any determination of litigation expenses.").

Courts in this Circuit have held that this principle extends to the circumstance in which attorneys at law firms represent themselves *pro se*. *See, e.g.*, *Mischon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11 Civ. 4971 (JMF), 2014 WL 656062, at *7 (S.D.N.Y. Feb. 20, 2014); *Sheldon v. Khanal*, No. 08 Civ. 3676 (KAM) (LB), 2011 WL 3876970, at *7 (E.D.N.Y. Aug. 31, 2011) ("[N]umerous courts in this Circuit, as well as the Supreme Court, have concluded that *pro se* litigants may not claim attorneys' fees pursuant to statutory fee-shifting provisions, even if they are lawyers.") (citing *Kay*, 499 U.S. at 438; *Hawkins*, 163 F.3d at 694; *Kurz v. Chase Manhattan Bank*, 273 F. Supp. 2d 474, 481 (S.D.N.Y. 2003); *Texaco Inc. S'holder Deriv. Litig.*, 123 F. Supp. 2d 169, 172–73 (S.D.N.Y. 2000)); *Newman & Cahn*, 388 F. Supp. 2d at 119;

*Menton v. Experian Corp.*, No. 02 Civ. 4687 (NRB), 2003 WL 21692820, at *3 (S.D.N.Y. July 21, 2003).

By contrast, as to costs, "[a]n award of costs to a *pro se* litigant . . . presents a different question [from that of attorney's fees] because it would represent funds actually expended." *Zalaski v. City of Hartford*, 723 F.3d 382, 395 (2d Cir. 2013) (quoting *Carter v. Vets. Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986)); *see also Ippolito v. Goord*, No. 05 Civ. 6683L (MWP), 2008 WL 5000093, at *3 (W.D.N.Y. Nov. 18, 2008) (declining to award *pro se* litigant's attorneys' fees but granting request for reimbursement of expenses, *e.g.*, photocopying costs). "[C]ourts may award [costs] under § 1447(c) . . . where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. "Objective reasonableness is evaluated based on the circumstances as of the time that the case was removed." *Williams v. International Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (summary order) (citing *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).

M&G has identified one such out-of-pocket cost incurred between February 25, 2015 and April 3, 2015: $85.44 in transcript costs.  Klein Decl., Ex. 14.  Payment by Daibes of such costs is appropriate under § 1447(c).  The Court accordingly directs Daibes to pay M&G $85.44 by May 15, 2015.

## IV.   Motion for Rule 11 Sanctions

Finally, the Court considers M&G's motion for Rule 11 sanctions.

### A.      Applicable Legal Principles

Under Federal Rule of Civil Procedure 11(c), a court, by a party's motion or on its own, may impose appropriate sanctions on "any attorney, law firm, or party that violated" Rule 11(b) or is responsible for the violation.  Rule 11(b) provides that:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11(c)(2) sets forth the procedure to be followed where counsel pursues sanctions based on the offending attorney's court submissions.  The "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  Rule 11(c)(2) also creates a "safe harbor" that gives the offending attorney a chance to modify or withdraw the challenged submission so as to avoid sanctions.  *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89–90 (2d Cir. 2003).  Under Rule 11(c)(2), a motion for sanctions is initially to be served only on the offending attorney, and not filed with the Court.  The motion is to be filed with the Court only if, 21 days after such service, the challenged submission has not been "withdrawn or appropriately corrected."  Fed. R. Civ. P. 11(c)(2).  Sanctions may not be awarded under Rule 11(c)(2) where proper notice and

opportunity to withdraw or correct the filing were not provided to the party to be sanctioned. *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010).

When a sanctions motion has been properly filed, the Court may impose sanctions if the offending attorney responsible for the submission is found to have acted with "objective unreasonableness." *Pennie & Edmonds LLP*, 323 F.3d at 90; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009); *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("Rule 11(b)(2) 'establishes an objective standard, intended to eliminate any empty-head pure-heart justification for patently frivolous arguments.'" (citing Rule 11 advisory committee note to 1993 amendments)).  "In other words, Rule 11 is violated if a pleading is submitted for 'any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the reasonable belief that pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at *5 (S.D.N.Y. Feb. 22, 2013) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)).  When a party's legal contentions are challenged as violating Rule 11, "[t]he operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012); *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success.").  "Because the Rule 11 violation occurs when the offending paper is signed, a court must determine whether the certification requirement has been

flouted by focusing on the situation existing when the paper was signed." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991).

The Second Circuit has further advised that "[d]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original) (citation omitted). The notice requirement, at a minimum, "mandates that the subject of a sanctions motion be informed of (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Id.* The moving party's Rule 11 motion papers can satisfy the notice requirement and an opportunity to submit written briefs in opposition to a Rule 11 motion can constitute a sufficient opportunity to be heard. *See Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000); *Schlaifer Nance & Co.*, 194 F.3d at 335. Although the Second Circuit favors oral argument on Rule 11 sanctions motions, the district court is not obliged to hold a hearing where none has been requested. *Margo*, 213 F.3d at 64; *Schlaifer Nance & Co.*, 194 F.3d at 335–36.

A Rule 11 sanction must be sized to achieve deterrence. "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Margo*, 213 F.3d at 64 ("Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'"). The Notes of the Advisory Committee accompanying the 1993 Amendment provide that:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid

into the court as a penalty. However, under unusual circumstances, particularly for [Rule 11](b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some, or all of this payment be made to those injured by the violation.

Thus, "Rule 11 is not a fee-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees." *Estate of Calloway v. Marvel Entm't Grp.*, 9 F.3d 237, 241 (2d Cir. 1993) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990)); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 13-4154-cv (2d Cir. Apr. 20, 2015) ("[A] district court abuses its discretion in imposing sanctions when the sanctions are used for enforcing or collecting damages."); *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcop, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994) ("[T]he principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses.").

A court fashioning a deterrent sanction has "broad discretion" to "tailor[] appropriate and reasonable sanctions under [Rule] 11." *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990). "Where a district court concludes that a monetary award is appropriate, its broad discretion extends to determining the amount of the award" and "including an award of attorney's fees where warranted." *Lawrence*, 417 F. App'x at 15; *see also Caisse Nationale de Credit Agricole-CNCA*, 28 F.3d at 266; *Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir. 1987).

Finally, sanctions may be assessed against represented parties *and* their attorneys where a court finds that a "party has acted in bad faith, or proceeded with an improper purpose." *S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, No. 14 Civ. 4157 (LAK) (AJP), 2014 WL 6968039, at *11 (S.D.N.Y. Dec. 9, 2014); *see also Simon DeBartolo Grp., L.P.*, 186 F.3d at 176. However, a "court must not impose a monetary sanction against a represented party for violating Rule

11(b)(2) or on its own, unless it issued the show-cause order under Rule 11(c)(3)."  Fed. R. Civ.
P. 11(c)(5).

> **B.      Discussion**

M&G pursues Rule 11 sanctions on the ground that it was frivolous for Daibes to attempt
to remove this case four years after M&G's initial pleading.  The procedural requirements for
imposing such a sanction have been met.  On February 25, 2015, M&G notified Daibes by letter
that it intended to pursue sanctions based on the removal, and it filed its sanctions motion 37
days later, on April 3, 2015, in compliance with the 21-day "safe harbor" set by Rule 11(c)(2).
And this Court afforded Daibes an opportunity to be heard on the sanctions motion, by giving
him the opportunity to submit a legal brief opposing sanctions, which he took, and to argue
against such sanctions at the April 27, 2015 conference.

On the merits, the Second Circuit has held that sanctions for a frivolous removal are
available.  In *Four Keys Leasing & Maintenance Corp. v. Simithis*, it held sanctions appropriate
where "it should have been patently obvious to any attorney who had familiarized himself with
the law governing removal of actions to the federal courts" that removing the case from state
court was "frivolous."  849 F.2d 770, 773 (2d Cir. 1988).  In that case, defendant removed after
unsuccessfully appealing a New York Civil Court final judgment to the Appellate Division; the
Second Circuit proclaimed that "it would be a perversion of the removal process to allow a
litigant who is subject to a final judgment to remove that final judgment to the federal courts for
further litigation."  *Id.* at 774; *see also id.* ("If a claim that is time-barred under state law [it]
cannot have life breathed into it by being removed to federal court.") (citing *Witherow v.
Firestone Tire & Rubber Co.*, 530 F.2d 160 (3d Cir. 1976)).  The Second Circuit thereby

affirmed a sanctions order of $5,000—and imposed further sanctions of $2,500 for the frivolous

appeal. *Id.* The Second Circuit emphasized:

> [n]o longer is it enough for an attorney to claim that he acted in good faith, or that
> he personally was unaware of the groundless nature of an argument or claim . . . .
> [T]he language of . . . Rule 11 explicitly and unambiguously imposes an affirmative
> duty on each attorney to conduct a reasonable inquiry into the viability of a pleading
> before it is signed.

*Id.* at 774 (quoting *Eastway Constr. Corp.*, 762 F.2d at 252); *see also Cardona v. Mohabir*, No.

14 Civ. 1596 (PKC), 2014 WL 1804793, at *6 (S.D.N.Y. May 6, 2014) (sanctioning defense

counsel $3,000 to the Court for frivolous removal); *Polanco v. 21 Arden Realty Corp.*, 121 B.R.

425, 428 (S.D.N.Y. 1990) (imposing sanctions of $10,000 to the Court and $2,500 of attorneys'

fees for removing with "manifest hope of delaying all proceedings" in state court).

The removal here, undertaken by Daibes's current counsel, Abrahamsen, was similarly

frivolous because it was blatantly untimely.  Abrahamsen conceded to this Court that Daibes had

been free to remove the case back in April 2011.  This was plainly correct, as the availability of

federal jurisdiction based on diversity was apparent on the face of the complaint.  Abrahamsen's

sole basis for removing four years later, notwithstanding the 30-day deadline set by 28 U.S.C. §

1446(b)(1), is that service was deficient—either because Daibes's attorney, Sekas, had not been

served or because service on Sekas was insufficient to constitute service on Daibes.  But for the

reasons reviewed above, that claim is frivolous.  The documentary record proves that Sekas was

served and accepted service.  And Abrahamsen ultimately admitted at argument that he had no

basis to claim otherwise and had not investigated the point.  The record also uniformly shows

that Sekas, in 2011, was, as he represented, authorized to accept service on behalf of his client

Daibes.  In any event, even if the validity of M&G's service had been open to contest in 2011,

Daibes, through the actions of his successive counsel Sekas and Abrahamsen during the next

four years, repeatedly waived any such claim—by litigating other jurisdiction issues, and by litigating this case on the merits for years, without ever challenging service. A "reasonable inquiry" into the case law, *see Four Keys Leasing & Maint. Corp.*, 849 F.2d at 774, would have made Daibes's waiver of any right to contest service, and therefore waiver of his right to invoke improper service as basis for an otherwise untimely removal, apparent.

Under these circumstances, Abrahamsen's 2015 removal of the case two days after the Appellate Division directed that summary judgment be entered against Daibes was, patently, a ploy to subvert that adverse ruling. It cannot be said to reflect a reasonable or responsible determination on his part based on the facts and case law that removal remained timely. Quite to the contrary, Abrahamsen's removal of the case in 2015 was objectively unreasonable. *See Pisciotta v. Dobrynina*, No. 08 Civ. 5221 (RRM) (MDG), 2009 WL 1913393, at *4 (E.D.N.Y. July 2, 2009) ("The law governing removal of state court actions to federal court does not countenance such gamesmanship. Neither does Rule 11.") And once M&G explained to Abrahamsen, in its letter pursuant to Rule 11(c)(2) and citing case law, why removal was frivolous, Abrahamsen had no business continuing to defend removal.[7]

As to the amount of sanctions, a court has "broad discretion in tailoring appropriate and reasonable sanctions under Rule 11." *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 220–21 (E.D.N.Y. 2011) (quoting *O'Malley*, 896 F.2d at 709). M&G has asked that the Court require Daibes to

---

[7] Although not necessary to the Court's ruling that Rule 11 sanctions are merited, Abrahamsen's formulation of the removal notice and aspects of his litigation defending it fell below objective standards of professional reasonableness. In particular: (1) Abrahamsen's claim that federal question jurisdiction existed based on his intended defense in this case was frivolous and contradicted by clear case law; (2) Abrahamsen's substitution of ellipses for the language in the Supreme Court's decision in *Murphy Brothers* that undermined his claim as to service was disingenuous and deceptive; and (3) Abrahamsen's factual claim before this Court, which he had not investigated and which he eventually renounced, that Sekas had not in fact received service, was irresponsible.

impose sanctions under which Daibes would pay M&G the value of the time spent by M&G's attorneys in contesting removal, or about $45,000.  Pl. Reply Br. Sanctions 5; Mintz Decl., Ex. 14; Lawler Decl. Sanctions, Ex. 3.  The Court declines to order such a sanction.  Because "the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty."  Fed. R. Civ. P. 11 advisory committee note to 1993 amendments.  And, because M&G represented itself in this action, it is not out of pocket such fees, and the Court has already awarded M&G its out-of-pocket costs, pursuant to § 1447(c).[8]

The Court does, however, in the interest of deterring future frivolous filings of the nature here, impose on Abrahamsen a sanction in the amount of $10,000.  This sanction, the Court finds, is merited because Abrahamsen's notice of removal and defense of that removal had no basis in law and indeed were so contrary to existing law as to be frivolous.  *See* Fed. R. Civ. P. 11(b)(2).  The Court has set the $10,000 figure based on its considered judgment that such a sanction is sufficient, but no greater than necessary, to deter similar misconduct.  The Court declines to impose this (or any other) sanction on Abrahamsen's client, Daibes, for his attorney's breach of Rule 11(b)(2).  *See* Fed. R. Civ. P. 11(c)(5).

The Court accordingly imposes Rule 11 sanctions on Abrahamsen, in the amount of $10,000, for violating his obligations under Rule 11 by filing a frivolous notice of removal in this

---

[8] In so ruling, the Court, of course, preserves for M&G the right to pursue such recompense from Daibes in state court, to the extent it may be entitled under state law to compensation for the value of its work.  To the extent the Court's assessment may be relevant to such a claim, the Court notes that M&G legitimately was forced to spend substantial attorney hours in this Court combating Daibes's bid for removal, including after Daibes persisted in defending that removal despite receiving M&G's Rule 11(c)(2) letter, and that M&G's submissions to this Court were topical, responsive, proportionate, and effective.

case and for defending that notice after its frivolousness had been drawn to his attention.

Abrahamsen shall pay that sum to the Clerk of this Court by May 15, 2015.

## CONCLUSION

For the foregoing reasons:

1.      M&G's motion to remand this case to New York State Supreme Court is granted.

2.      M&G's motion for costs incurred as a result of Daibes's removal is granted.

Daibes is directed to pay M&G $85.44 for its costs by May 15, 2015.

3.      M&G's motion for attorney fees' incurred as a result of Daibes's removal is

denied.

4.      M&G's motion for Rule 11 sanctions against attorney Richard J. Abrahamsen,

Esq., is granted.  The Court directs Abrahamsen to pay $10,000 to the Clerk of this Court by

May 15, 2015.

The Clerk of Court is respectfully directed to remand this action to the Supreme Court for

the State of New York, New York County, terminate the motions pending at docket numbers 20

and 23, and close this case.


SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge


Dated: May 6, 2015
        New York, New York

27